UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FELICIA     RODRIGUEZ,     an
individual,

         Plaintiff,

v.                              Case No: 2:13-cv-452-FtM-29CM

ESTERO   FIRE   RESCUE,   a
political subdivision of the
State of Florida and SCOTT
VANDERBROOK, an individual,

         Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on the Defendants' Joint Motion for Summary Judgment (Doc. #40) filed on August 28, 2014. Plaintiff filed a Response (Doc. #47) on September 29, 2014. Defendants filed a Reply (Doc. #50) on October 20, 2014, to which plaintiff filed a Sur-Reply (Doc. #53) on October 28, 2014. Also before the Court is Defendants' Motion to Strike Portions of the Affidavits of Felicia Rodriguez and Jeannine Horton (Doc. #51) filed on October 20, 2014. Plaintiff filed a Response to Defendants' Motion to Strike (Doc. #52) on October 28, 2014. For the reasons set forth below, defendants' motion for summary judgment is granted.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)

(finding summary judgment "may be inappropriate where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." <u>Allen v. Bd. of Pub. Educ.</u>, 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.

The following facts are undisputed and are taken in a light most favorable to the non-moving party, plaintiff.

### A.   Estero Fire Rescue

Defendant Estero Fire Rescue (EFR) is an independent special taxing district established by the Florida Legislature to provide fire protection and rescue services to the citizens who reside within the Estero Fire District.  Defendant Scott Vanderbrook (Vanderbrook) was promoted to the position of Fire Chief by the Estero Fire Commission on October 1, 2008, and continues to work in that capacity.[1]  As the Fire Chief, Vanderbrook is responsible for the operations and administration of EFR, including all personnel decisions.  (Doc. #40-8, p. 2.)

---

[1]Vanderbrook assumed the role of "acting" Fire Chief on May 1, 2008, but was not formally promoted to the position of Fire Chief until October 1, 2008.  (Doc. #40-8, p. 2.)

EFR operates in a paramilitary style, requiring those with lower rankings to follow the orders issued by those with a higher ranking.  The highest ranking official in the Estero Fire District is an elected commissioner, followed by the Fire Chief.  Below the Fire Chief in the Operations division, in ranked order, are the Assistant Fire Chief, Battalion Chiefs, Lieutenants, Engineers, and Firefighters.  If an employee from the Operations division is absent, an employee in the rank immediately below the absent employee performs the job duties of the position one step above his or her position.  The employee is referred to as being in the "acting" or "ride up" position and assumes all job responsibilities for the higher ranked position for that shift.  (Id.)

EFR operates in three rotating shifts: the A, B, and C shifts. Operations division employees are assigned to one of the three shifts and work 24-hour shifts every third day.  Each shift has one Battalion Chief (BC) who directs operations in the field and is in charge of his or her respective shifts.  The BCs drive an SUV equipped with special command equipment and radios and do not ride on the fire trucks.  An "acting BC" is a designation provided to a maximum of one lieutenant on each shift who fills in when the BC is absent.  (Id.)  EFR established a training academy for those interested in obtaining the position of Lieutenant in June 2010 and a similar training academy was established for those interested in becoming a BC in 2013.

4

**B.   Plaintiff's Employment with EFR**

Plaintiff Felicia Rodriguez (Plaintiff or Rodriguez) was hired by EFR as a Firefighter/Paramedic on October 23, 2000, and was promoted to Lieutenant on July 8, 2005. (Doc. #40-1, p. 8; Doc. #40-5, p. 2.) In 2007, plaintiff injured her knee in a work-related accident and went out on medical leave. Eventually, the Fire Chief at the time, Jeff Lindsey, terminated plaintiff due to the exhaustion of her medical leave. (Doc. #40-1, p. 20; Doc. #40-8, p. 3.) Rodriguez contested her termination in binding arbitration and was awarded reinstatement. In July 2008, after plaintiff's reinstatement but prior to her being able to return to full duty, Vanderbrook authorized plaintiff's return to work on light duty. (Doc. #40-1, p. 21; Doc. #40-8, p. 2.)

In 2010, plaintiff again went on medical leave for spine surgery. While plaintiff was on leave, EFR was dealing with a personality conflict between two employees on C-shift, BC Jeannine Horton (Horton) and Lieutenant Steve Harris (Harris). (Doc. #40-1, p. 32; Doc. #40-9, p. 2.) In order to resolve the conflict, Assistant Fire Chief Mark Wahlig (Wahlig) reassigned Harris to plaintiff's open position on B-shift. When Rodriguez returned from medical leave, Wahlig decided to reassign plaintiff to Harris's former position on C-shift. (Doc. #40-9, p. 3.)

**(1)  Shoulder Surgery and Requests to Return on Light Duty**

Rodriguez had surgery on her left shoulder in September 2011, and was out of work on extended medical leave until March 5, 2012. (Doc #40-1, p. 33.)  On November 8, 2011, plaintiff's doctor noted that plaintiff could return to work on November 24, 2011, "with no use of [left] arm.  Ok to do office work – ok to drive, type.  No lifting."  (Doc. #40-3, p. 22.)  Plaintiff subsequently contacted Linda Conway (Conway), the Human Resources Director at EFR, regarding her possible return to work on light duty.  In doing so, plaintiff indicated that she would like to "drive and assist the BC in her daily duties."  (Doc. #40-6, p. 5.)  After receiving plaintiff's request, Vanderbrook inquired as to whether any light duty work could be assigned to Rodriguez.  (Doc. #40-8, p. 4.)  In response to Vanderbrook's inquiry, Phillip Green, the Division Chief of Prevention, stated that Rodriguez could perform preplans.[2] (Doc. 40-1, p. 39; Doc. #40-8, p. 6.)  Vanderbrook discussed plaintiff's ability to safely perform preplans with Conway and

---

[2]A preplan is a drawing or map of a building that firefighters use when they respond to that building in an emergency situation. Preplans were formerly created by firefighting personnel, but the responsibility is now delegated to the Inspections division led by Chief Phillip Green.  (Doc. #40-1, p. 25; Doc. #40-8, p. 4.)  To create a preplan, someone must visit the site to inspect it in person.  In order for the inspection to be complete, the inspector would have to inspect the roof, which may require the use of a ladder.  (Doc. #40-1, pp. 25-26.)  After visiting the site, the inspector would complete the map.  (Id.)

ultimately determined that plaintiff was unable to complete the preplans due to her medical restrictions. (Doc. #40-8, p. 4.)

On January 3, 2012, plaintiff emailed Conway a doctor's note stating that plaintiff "may return to work light duty." (Doc. #40-6, p. 8.) The email also stated that "I would like to come back to light duty on my 24 hour shift riding with the BC as others have done in the past. I feel that assisting the BC and helping out with the day to day duties will give me an insight on the job of the BC and get me a little training for the position." (Doc. #40-6, p. 7.) In response, Conway stated that EFR was unable to offer any light duty until her doctor provided documentation as to any restrictions imposed on plaintiff. (Id.) On January 19, 2012, plaintiff informed EFR that she was given a two to five pound lifting restriction on her left arm. (Doc. #40-6, p. 9.) Vanderbrook subsequently considered plaintiff's request to ride with her BC, and decided that it would be of little value to EFR to pay someone to ride with the BC in the field while also unable to perform any physical components of the job. Because plaintiff would be providing no benefit to EFR while getting paid, Vanderbrook decided that EFR would not offer plaintiff a light duty position at that time. (Doc. #40-8, p. 5.)

### (2) Plaintiff's CPR Certification Expires

On March 2, 2012, Rodriguez provided EFR with a doctor's note releasing her to work on March 5, 2012. (Doc. #40-6, pp. 13-14.)

Plaintiff returned to active duty on March 5, 2012, but was immediately placed on paid administrative leave due to the expiration of her CPR certification. EFR also placed Chuck Collins (Collins), Patrick McCaffery (McCaffery), and Roberto Medina (Medina) on paid administrative leave because their CPR certifications also expired at the end of February.[3] (Doc. #40-1, p. 50; Doc. #40-9, p. 4.) EFR also initiated an investigation into the matter. Plaintiff and the others remained on paid administrative leave until March 13, 2012, when EFR offered an in-house CPR class.

On March 6, 2012, plaintiff, Collins, and Medina attended a CPR class taught by a fellow firefighter. Plaintiff, however, did not complete the class and the instructor failed to turn in the appropriate paperwork, rendering the class ineffective. (Doc. #40-1, p. 51.) Two days later, plaintiff and Collins took a CPR class offered at the Medical Career Institute (MCI). Both received CPR cards, which were subsequently submitted to EFR. Unfortunately, EFR could not verify the credentials of the class. As such, EFR provided a class to plaintiff, Medina, and McCaffery on March 13, 2012, and immediately returned them to duty. At the

---

[3]Plaintiff and Collins took a class to renew their certifications on March 4, 2012. The class, however, was only valid for those with unexpired CPR certifications, unless permission to take the abbreviated class was obtained from the program administrator. (Doc. #40-1, p. 53; Doc. #40-19, p. 3.)

conclusion of EFR's investigation, plaintiff, Collins, Medina, and McCaffery all received verbal written warnings. (Doc. #40-1, p. 55; Doc. #40-9, p. 5.)

### (3)  Plaintiff Requests Training

In late January or early February 2012, Wahlig learned that Collins, the B-shift BC, was planning to resign, but the exact date of the resignation was unknown.  (Doc. #40-9, p. 3.)  Upon his resignation, EFR intended for Lieutenant Grant Schwalbe (Schwalbe) to serve as acting BC on B-shift until EFR could officially fill the BC position.  Since the B-shift would also need a temporary acting BC in the event Schwalbe was absent, Wahlig selected Lieutenant Glen Brownlee (Brownlee) to train for acting BC duties.  (Id.)  Brownlee was selected to serve as acting BC while plaintiff was on medical leave.

After Rodriguez returned from medical leave in 2012, Wahlig allowed Horton to informally teach Rodriguez some of the duties of a BC.  (Doc. #40-1, p. 61; Doc. 40-9, p. 6.)  Wahlig informed Horton that Rodriguez was not to be removed from her active station or ride in the BC's car, and no overtime was to be incurred by plaintiff or others as a result of the informal training.  (Id.) Shortly after the training began, plaintiff accidentally marked her daily activities in the station log book as "BC training," and made a mistake on a staffing duty that Horton was supposed to be overseeing.  (Id.)  In June 2012, Wahlig saw Horton going through

the BC car with Rodriguez at station 43. Rodriguez, however, was assigned to station 44. To Wahlig, it appeared that Horton excused plaintiff form her duties as a lieutenant to train her on the BC car. (Id.) On June 27, 2012, Horton indicated in an email to her entire shift that "Lt. Rodriguez is training in the [Firehouse] staffing and other ride-up BC items." (Doc. #40-9, p. 7.) After learning of the email, Wahlig ordered Horton to stop training Rodriguez because he did not want others to think that official training was being provided. (Id.)

In February 2013, EFR established a training academy for those interested in learning the duties of an acting or ride up BC. (Doc. #40-8, p. 5.) Rodriguez and two male lieutenants were the first participants accepted into this academy and have since completed the training.

**C.   The Open BC Position**

On February 26, 2013, EFR officially began accepting applications for the B-shift BC position vacated by Collins. Conway sent an email to every EFR employee detailing the qualifications for the position and the instructions on how to apply for the position. (Doc. #40-5, p. 7; Doc. #40-6, pp. 31-34.) Rodriguez did not submit an application for the open BC position. (Doc. #40-1, p. 28; Doc. #40-9, p. 7.) As such, EFR could not and did not consider plaintiff for the open position.

Brownlee, on the other hand, applied for and was promoted to the position of BC on April 22, 2013.  (Doc. #40-9, p. 7.)

**D.   Plaintiff Initiates this Action**

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on March 30, 2012, and received her Notice of Right to Sue on March 21, 2013.  (Doc. #1, ¶ 9; Doc. #40-3, p. 3.)  Plaintiff initiated this action on June 14, 2013, by filing an eight-count Complaint against EFR and Vanderbrook.  (Doc. #1.)  Plaintiff alleges claims against EFR for disability discrimination in violation of the American with Disabilities Act (ADA) (Count I) and the Florida Civil Rights Act of 1992 (FCRA) (Count II), gender discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII) (Count III) and the FCRA (Count IV), national origin discrimination in violation of Title VII (Count V) and the FCRA (Count VI), and interfering with Plaintiff's contractual rights because of her race in violation of 42 U.S.C. § 1981 (Count VII).  Plaintiff also asserts that Vanderbrook deprived her of her constitutional right to equal protection in violation of 42 U.S.C. § 1983 (Count VIII).

**E.   Subsequent Employment Action**

On March 15, 2014, plaintiff was notified that her employment with EFR was to be terminated on May 24, 2014.  Following her termination, plaintiff filed a Charge of Discrimination with the EEOC and received her Notice of Right to Sue on August 6, 2014.

Plaintiff subsequently initiated a retaliation action against EFR and Vanderbrook, which remains pending before the Honorable Sheri Polster Chappell.  Case. No. 2:14-cv-635-SPC-CM.

### III.

In Count I of the Complaint, plaintiff alleges that EFR violated her rights under the ADA when it denied her requests to return to work on light duty.  (Doc. #1, ¶ 18, 39-53.)  Count II of the Complaint asserts an identical claim of disability discrimination under the FCRA.  The FCRA is to be construed in conformity with the ADA.  Albra v. Advan, Inc., 490 F.3d 826, 835 (11th Cir. 2007).  Accordingly, the analysis of FCRA claims is identical to the analysis of ADA claims, and federal case law interpreting the ADA is applicable to claims arising under the FCRA.  Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255 (11th Cir. 2007).  Thus, the Court will address Rodriguez's ADA and FCRA claims together.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  "[T]o establish a prima facie case of employment discrimination under the ADA, a plaintiff must demonstrate that (1) [s]he has a disability, (2) [s]he is a 'qualified individual,' which is to

say, able to perform the essential functions of the employment position that [s]he holds or seeks with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against [her] because of the disability." D'Angelo v. ConAgraFoods, Inc., 422 F.3d 1220, 1226 (11th Cir. 2005) (quotations omitted).

EFR argues that summary judgment is warranted as to Counts I and II of the Complaint because plaintiff was not a qualified individual with a disability. (Doc. #40, p. 20.) No argument to the contrary has been proffered by plaintiff.

To establish the second prong of her prima facie case, Rodriguez must prove that she is a "qualified individual"-that is, someone with a disability who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Essential functions are "the fundamental job duties of a position that an individual with a disability is actually required to perform." Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1257 (11th Cir. 2007). "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8).

In this matter, the undisputed evidence shows that plaintiff was unable to perform the duties of a paramedic/firefighter after her shoulder surgery and that there were not any accommodations

that could have helped her perform the essential duties of a lieutenant.  (Doc. #40-1, p. 8.)  Indeed, the physical demands that must be met to perform the essential functions of a lieutenant include the ability to "regularly move up to a hundred pounds and occasionally lift and/or move more than a hundred pounds." (Doc. #40-1, p. 22; Doc. #40-3, p. 7.)  When plaintiff first asked to return to work in November 2011, she was restricted from using her left arm altogether, and in January 2012, plaintiff's doctor authorized her return to work, but imposed a two to five pound lifting restriction on her left arm.  Based on this evidence, it is clear that plaintiff could not perform one of her job's essential functions with or without a reasonable accommodation. See Galloway v. Aletheia House, 509 F. App'x 912, 914 (11th Cir. 2013).  Accordingly, EFR's motion for summary judgment is granted as to Counts I and II of the Complaint.

### IV.

Rodriguez alleges that defendants intentionally discriminated against her because of her gender, national origin, and race in violation of Title VII, the FCRA, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.  Discrimination claims brought under the Equal Protection Clause, 42 U.S.C. § 1981, Title VII, or the FCRA are subject to the same standards of proof and employ the same analytical framework.  See Bryant v. Jones, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009); Valenzuela v. GlobeGround North Am., LLC, 18 So. 3d

17, 21 (Fla. 3d DCA 2009) (holding that FCRA claims are subject to the same analysis as Title VII claims).  Accordingly, to establish a prima facie case of disparate treatment, plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job.  Burke-Fowler v. Orange Cnty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006).

A plaintiff can establish a claim of employment discrimination using either direct or circumstantial evidence. Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003). When a plaintiff fails to provide direct evidence of discrimination, the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies.  Under this approach, a plaintiff must first present a prima facie case of discrimination.  Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1326 (11th Cir. 2011).  If the plaintiff makes this showing, she raises a presumption of discrimination.  Id.

Once this presumption is raised, "[t]he burden then shifts to the employer to rebut [it] by producing evidence that [the employer's] action was taken for some legitimate, non-discriminatory reason." EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002) (citing Tex. Dep't of Cmty. Affairs v.

Burdine, 450 U.S. 248, 254-55 (1981)).   If the employer is able to present such evidence, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted and thus disappears. Smith, 644 F.3d at 1325-26.   The burden then shifts back to the plaintiff to discredit the preferred nondiscriminatory reasons by showing that they are pretextual.   Id. at 1326.   To demonstrate pretext, the plaintiff's evidence "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradiction in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy or credence." Vessels v. Atlanta Indep. School Sys., 408 F.3d 763, 771 (11th Cir. 2005) (quoting Cooper v. S. Co., 390 F.3d 695, 725 (11th Cir. 2004)).   "[I]f a jury reasonably could infer from the evidence presented that the employer's legitimate justification is pretextual, the question becomes whether the evidence, considered in the light most favorable to the plaintiff, yields the reasonable inference that the employer engaged in the alleged discrimination."   Smith, 644 F.3d at 1326.   If the record raises such an inference, summary judgment is precluded.   Id.

Plaintiff claims that defendants discriminated against her on the basis of her gender, national origin, and race by (1) transferring her from B-shift to C-shift; (2) denying her requests to return on light duty; (3) issuing a verbal written warning when her CPR certification expired; (4) denying her requests to train

for the BC position; and (5) failing to promote her to the position of BC.  The Court will address each claim of discrimination in turn.

## A.    The 2010 Shift Swap

Plaintiff contends that EFR discriminatorily changed her shift from B-shift to C-shift when she returned from medical leave in 2010.  Defendants argue that summary judgment is warranted as to this issue because plaintiff cannot establish that she suffered an adverse employment action as a result of the shift swap.  The Court agrees.

In order to satisfy the adverse employment action element, the employee must show either an ultimate employment decision, such as termination, failure to hire, or demotion, or, for conduct that falls short of an ultimate employment decision, "*serious* and *material* changes in the terms, conditions, or privileges of employment."  Hall v. Dekalb Cnty. Gov't, 503 F. App'x 781, 787 (11th Cir. 2013) (quoting Crawford v. Carroll, 529 F.3d 961, 970-71 (11th Cir. 2008)).  Proof of direct economic consequences is not required in every case, but "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment."  Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001).

Here, plaintiff has failed to show that the shift change amounted to an ultimate employment decision or caused serious and

material changes in the terms, conditions, or privileges of her employment.   Indeed, plaintiff testified that there is no difference between the two shifts and conceded that her responsibilities and pay remained the same.   (Doc. #40-1, p. 9.) Because the terms and conditions of plaintiff's employment were not impacted by the shift swap, the Court finds that summary judgment is warranted as to this issue.

**B.   The Denial of Light Duty**

Plaintiff claims she was treated differently because of her gender, national origin, and race because EFR provided light duty to others during her period of leave while it denied her requests. Defendants argues that plaintiff cannot show that another similarly situated employee outside her protected class received better treatment or that the reasons articulated by EFR for the denial of light duty were pretextual.   The Court agrees.

**1.   Similarly Situated Comparator**

In order to establish a prima facie case of discrimination, plaintiff must show that a similarly situated employee outside her protected class was treated differently.   The plaintiff and the employees she identifies as comparators must be "similarly situated in all relevant respects." Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003).   The Court must look to the rank, position, and job responsibilities of the comparators for sufficient similarity to plaintiff.   See, e.g.,

<u>Rioux v. City of Atlanta, Ga.</u>, 520 F.3d 1269, 1281 (11th Cir. 2008).  Here, the evidence shows that EFR provides light duty only when work within the employee's medical restrictions is available and the work will provide a value to the fire department.  (Doc. #40-8, p. 3.)  Thus, plaintiff must show that a similarly situated employee received light duty while she was on medical leave.

Plaintiff believes that David Russell (Russell), Jeremiah Krohnfeldt (Krohnfeldt), Timi Custer (Custer), and Fred Gonzalez (Gonzalez), were similarly situated and given light duty work while she was on medical leave.  The evidence, however, shows otherwise.

Russell, a white male, was hired by EFR as a Firefighter/Paramedic in 2005 and was promoted to the position of Engineer/Paramedic in April 2013.  (Doc. #40-11, p. 2.)  After undergoing surgery in May 2009, Russell was prohibited from lifting or carrying more than 10 pounds.  Russell informed EFR of his restrictions and asked for light duty while he recovered.  EFR, however, denied his request because no light duty was available. (<u>Id.</u>)  In December 2010, Russell suffered a rib fracture and was given a 5 pound lifting restriction.  In this instance, EFR was able to provide light duty for some shifts during the period of January 9, 2011, through January 19, 2011.  (<u>Id.</u>)  Russell suffered another injury in June 2011, and subsequently asked for light duty while he recovered for approximately three months.  EFR once again denied his request because no light duty was available.  (<u>Id.</u>)  In

April 2013, Russell, after spraining his right bicep muscle, asked for and received four days of light duty. (<u>Id.</u> at 3.) At no time did Russell ride with a BC while on light duty. (<u>Id.</u>) Because Russell was not provided with light duty work during the applicable time frame and was of a different rank, he cannot be considered a similarly situated employee. It is worth noting that, Russell, like plaintiff, did not receive light duty every time it was requested.

Krohnfeldt, a white male, has worked at EFR as a Firefighter Medic since 2007. (Doc. #40-12, p. 2.) After Krohnfeldt threw out his back in March 2013, his doctor placed him on light duty with a lifting restriction of 25 pounds. Due to his restrictions, EFR was able to provide him with light duty from April 8, 2013, through June 10, 2013. (Doc. #40-5, p. 5; Doc. #40-12, p. 2.) Krohnfeldt performed various office projects and inventory assignments while on light duty, but did not ride with the BC. (<u>Id.</u> at 2-3.) The Court does not find Krohnfeldt to be an appropriate comparator because he did not receive light duty when requested by plaintiff, his lifting restriction permitted him to lift substantially more than plaintiff, and he did not hold the same rank as plaintiff.

Custer, a white male and Firefighter at EFR, was given a lifting restriction of 10 pounds in April 2013 due to pain in his left arm. (Doc. #40-13, p. 2.) Custer asked for and was provided

with light duty while he recovered from his injury.  During his light duty, Custer shredded documents, painted, and ran miscellaneous errands.  (Id.)  Because Custer was of an inferior rank and received light duty more than a year after plaintiff requested it, he cannot be considered a similarly situated comparator.

Gonzalez, a Spanish/Cuban American Hispanic male, has neither requested nor performed light duty work during his employment with EFR.  Accordingly, he is not an appropriate comparator.  Because plaintiff has failed to identify an appropriate comparator, the Court finds that she has failed to establish a prima facie case of disparate treatment based on the denial of light duty.

**2.   EFR's Legitimate Reason**

Assuming plaintiff met her burden of demonstrating a prima facie case, the burden would then shift to EFR to articulate a legitimate, non-discriminatory reason for its actions.  EFR has presented evidence of legitimate reasons for denying plaintiff's requests for light duty.

Plaintiff first requested to return on light duty in November 2011.  In response to the request, Vanderbrook inquired as to the availability of light duty work and subsequently learned that preplans needed to be done.  Vanderbrook discussed Rodriguez's ability to safely perform preplans with Conway and determined that it would be a safety and liability risk to allow plaintiff to drive

an EFR vehicle with no use of her left arm.  (Doc. #40-8, p. 4.)
Vanderbrook and Conway also considered the possibility of having
someone else drive Rodriguez to the site inspections, but
determined that it would be a waste of resources to commit two
people to a job than can be performed by one person.  (Id.)
Vanderbrook thought plaintiff might be able to perform the second
part of the preplans, which requires drawing and computer work,
but no such work was available at that time.  (Id.)  Since no light
duty was available, EFR had to deny plaintiff's first request to
return to work on light duty.

In January 2012, plaintiff once again asked to return to work
on light duty.  Specifically, plaintiff indicated that she would
like to ride with her BC and learn the position.  Horton,
plaintiff's BC, told Vanderbrook that it would be a good time for
plaintiff to learn the ropes of the BC position because of her
medical restrictions.  Vanderbrook considered their suggestion,
but determined that EFR had no use for someone to be paid to ride
with the BC in the field while also unable to perform any of the
physical duties of a lieutenant or BC.  Thus, Vanderbrook denied
plaintiff's second request to return on light duty.  (Doc. #40-8,
p. 5.)

Based on the foregoing, the Court finds that EFR has
articulated legitimate, non-discriminatory reasons for denying
plaintiff's requests to return to work on light duty; thus, the

22

burden shifts to plaintiff to show that the proffered reasons were pretextual.

### 3.   Pretext

"To show pretext, a plaintiff must 'come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'"  Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1298 (11th Cir. 2006).  A reason, however, "cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).  "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] own business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."  Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000).

Here, plaintiff has presented no evidence from which a jury could reasonably infer that the legitimate reasons proffered by EFR were pretextual.  Plaintiff argues that she could have performed the non-physical duties of a BC while on light duty and that training while on light duty made the most sense because the

employee's available skill set could be utilized and it would have been a great opportunity for professional advancement.  This alleged evidence of pretext does nothing more than quibble with the reasons given by EFR for denying plaintiff's requests for light duty.  The role of the court is to prevent unlawful employment practices, "not to act as a super personnel department that second-guesses employers' business judgments."  Lee v. GTE Fla., Inc., 226 F.3d 1249, 1254 (11th Cir. 2000).  The fact that plaintiff disagrees with the decision made by EFR does not show that the action was taken for discriminatory reasons.

Plaintiff also believes that pretext can be established by the discriminatory and harassing comments permeating the workplace at EFR.  Plaintiff cites to two specific instances in which Vanderbrook made comments she believes were discriminatory.  The first was when Vanderbrook called Horton a "bitch" prior to his promotion to Fire Chief in 2008.  (Doc. #40-1, p. 60.)  The Court finds this statement to be too far removed to suggest plaintiff's requests for training were denied for discriminatory reasons.  Furthermore, Vanderbrook was responsible for Horton's promotion to the BC position.  (Id.)  The second instance was when Vanderbrook, when talking about Horton, said "what was she thinking with that decision?" and "why did she do that?" (Doc. #47-6, p. 3.)  Without more, the Court is unable to infer that this statement was discriminatory.

Plaintiff has only heard Vanderbrook and Wahlig make inappropriate comments while joking around and stated that "it was all in fun and games, no hurt feelings." (Doc. #40-1, p. 62.) The Court does not find inappropriate jokes to be evidence of discriminatory intent. Indeed, plaintiff, by her own admission, actively participated in the banter. (Id.; Doc. #40-16, p. 3.) Because plaintiff has not cited to any evidence that would lead a reasonable juror to conclude that plaintiff's requests to return on light duty were denied for discriminatory reasons, defendants' motion for summary judgment will be granted as to this claim.

**C.   The Verbal Written Warning**

Plaintiff claims that EFR subjected her to disparate discipline when her CPR card expired in March 2012. Defendants argue that plaintiff is unable to establish a prima facie case of disparate discipline because plaintiff cannot show that she suffered an adverse employment action or that EFR treated similarly situated employees outside of her protected class more favorably.

**1.   Adverse Employment Action**

As previously stated, plaintiff must show that the alleged actions caused serious and material changes in the terms, conditions, or privileges of her employment. The Eleventh Circuit has held that "memoranda of reprimand or counseling that amount to no more than a mere scolding, without any following disciplinary action, do not rise to the level of adverse employment actions

sufficient to satisfy the requirements of Title VII." Barnett v.
Athens Reg'l Med. Ctr., Inc., 550 F. App'x 711, 713 (11th Cir.
2013) (quoting Davis, 245 F.3d at 1236).  The negative evaluation
must actually lead to a material change in the terms or conditions
of employment, such as "an evaluation that directly disentitles an
employee to a raise of any significance." Gillis v. Ga. Dep't of
Corr., 400 F.3d 883, 888 (11th Cir. 2005).

In this case, plaintiff cannot establish a prima facie case
of discrimination based on the disciplinary action taken by EFR
because she has failed to point to any evidence suggesting that
the verbal written warning was an adverse employment action.
Indeed, plaintiff testified that she received a full paycheck while
on paid administrative leave and admitted that the verbal written
reprimand did not result in her termination, demotion, a reduction
in pay, or a change in her job duties.  (Doc. #40-1, pp. 54-55.)
Plaintiff also admitted that reprimand did not cause her to lose
any opportunities at EFR.  (Id.)  Rather, plaintiff testified as
to her mere displeasure with the reprimand in her file.  (Id.)
"An employee who receives criticism or a negative evaluation may
lose self-esteem and conceivably may suffer a loss of prestige in
the eyes of others who come to be aware of the evaluation.  But
the protections of Title VII simply do not extend to everything
that makes an employee unhappy." Davis, 245 F.3d at 1242 (internal
quotations and citation omitted).  Accordingly, plaintiff cannot

show that the verbal written warning was an adverse employment action, and cannot establish a prima facie case of disparate treatment based on the verbal written warning.

### 2.   Similarly Situated Comparator

If plaintiff had suffered an adverse employment action, she would have to further show that a similarly situated employee from outside her protected class was treated more favorably than she. When disciplinary action is involved, "[t]he quantity and quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Rioux, 520 F.3d at 1280 (internal quotations and citation omitted). "Misconduct merely similar to the misconduct of the disciplined plaintiff is insufficient." Id. (internal quotations and citation omitted).

Here, plaintiff claims that Lentz, a white male, is a proper comparator. Specifically, plaintiff asserts that Lentz received little to no discipline for a more serious offense. The record reflects that EFR placed Lentz on leave after it learned he was working with an expired ACLS certification and required him to draw from his Unscheduled Paid Personal Leave until he was recertified. EFR launched an investigation into Lentz's violation and suspended his status as an acting BC. Vanderbrook decided to suspend Lent for the violation, but in lieu of the suspension, Lentz agreed to reimburse EFR $1,673.24 in Paramedic Incentive pay

27

he received while his certification was expired. (Doc. #40-5, p. 7.) Because the misconduct for which Lentz was punished differs from plaintiff's misconduct, the Court finds that Lentz is not a sufficiently similar comparator for purposes of plaintiff's prima facie case.

More importantly, the evidence establishes that Collins and McCafferty, both of whom are white males, and Medina, a Hispanic male, were placed on paid administrative leave after their CPR certifications expired and ultimately received verbal written warnings. (Doc. #40-5, p. 6; Doc. #47-2, p. 10.) Because the disciplinary action taken against Rodriguez, Collins, McCafferty, and Medina for the expiration of their CPR certifications was identical, plaintiff cannot establish that similarly situated employees from outside her protected class were treated differently. As such, summary judgment is warranted in favor of defendants as to plaintiff's disparate discipline claims.

**D.   The Denial of Training for the BC Position**

Plaintiff asserts that EFR discriminated against her on the basis of her gender, national origin, and race by denying her requests to train for the BC position. While EFR admits that it denied Rodriguez's requests for training, it contends that it had a legitimate, nondiscriminatory reason for doing so.

### 1.  EFR's Legitimate Reason

At the time plaintiff requested the training, EFR generally trained only those lieutenants selected to serve as acting BC by permitting them to shadow the BC to learn the job.  The lieutenant only trained for the position when the BC and lieutenant found time to do so.  Thus, training was normally performed over a longer period of time, depending on how much advance notice EFR had before the vacancy.  (Doc. #50-3, p. 2.)

In late January or early February 2012, EFR learned that Collins, the B-shift BC, was going to resign in the near future. Due to the uncertain date of Collins's resignation, Wahlig needed someone to start training immediately so the person could fill the acting BC position as soon as possible in the event Collins resigned sooner than later.  Rodriguez was on medical leave when EFR learned of Collins's intent to resign and the date of her return was unknown; thus, Wahlig determined that she was ineligible for immediate training.  (Doc. #40-9, p. 4.)  Wahlig ultimately selected Brownlee for the acting BC position due to his qualifications.  Brownlee had 23 years of experience at EFR and would require less training due to the informal BC training he received on a prior occasion.

In the months following her return from medical leave, plaintiff again requested to train for the role of acting BC. Wahlig denied plaintiff's request for formal training because

there were no acting BC positions available and EFR did not want to incur the additional costs associated with such training. (Doc. #40-9, p. 6; Doc. #47-1, p. 29.) Furthermore, at least two male lieutenants, one Hispanic and one white, requested BC training around the same time, but were denied the same.

Instead, Wahlig allowed Horton to informally train Rodriguez on the duties of a BC as long as it did not look like official training. Wahlig informed Horton that Rodriguez was not to be removed from her active station or ride in the BC's car, and no overtime was to be incurred by plaintiff or others as a result of the informal training. (Id.) Wahlig imposed this limitation because he did not want it to look like Rodriguez was getting any preferential treatment. (Id.) During the training, Wahlig thought that certain acts of Horton and Rodriguez created an appearance of official training. Consequently, Wahlig order Horton to stop the training because he did not want to create a double standard in the minds of those who had wanted the training, but were denied the opportunity.

Based on the foregoing, the Court finds that EFR has met its burden of presenting sufficient evidence of a legitimate, nondiscriminatory reason for training Brownlee for the acting position instead of plaintiff. Thus, plaintiff must cite to some evidence in the record that would be sufficient to establish that the proffered reason is a pretext for discrimination.

### 2.   Pretext

To establish pretext, plaintiff first contends that she could have been offered BC training upon her return from medical leave. As stated above, EFR had already selected Brownlee to train for and serve as the acting BC; thus, there was no need to train another employee for the position.  In fact, plaintiff was not the only employee to have a request for BC training denied.  Therefore, the Court finds that plaintiff's argument does suggest that EFR's decision to deny her request for training was a pretext for discrimination.

Plaintiff also argues that Wahlig's decision to rescind his authorization of informal training is evidence of pretext because she did not violate the informal training parameters he set. Wahlig, however, did not say that plaintiff violated the training parameters, but rather that, in his opinion, it appeared as if Rodriguez was receiving official training.  Because he did not want others to think that Rodriguez was receiving preferential treatment, he ordered Horton to stop the training.  Thus, the Court finds that plaintiff has failed to show that reason proffered by EFR was false, and even if she could show that the reason was false, she has failed to present any evidence suggesting that the reason was pretextual.  Accordingly, defendants' motion for summary judgment as to plaintiff's claims for failure to train is granted.

31

**E.   Failure to Promote**

To prevail on a claim of failure to promote, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004) (citing Lee, 226 F.3d at 1249). EFR argues that it is entitled to summary judgment on plaintiff's failure to promote claim because it had a legitimate, nondiscriminatory reason for selecting Brownlee.

**(1)   EFR's Legitimate Reason**

EFR has articulated a legitimate, nondiscriminatory reason for not choosing Rodriguez for the BC position: Rodriguez did not apply for the position, and even if she had applied for the position, EFR would still have promoted Brownlee to the BC position because it felt that Brownlee was more qualified for the position. Although Rodriguez and Brownlee both had considerable experience responding to a variety of emergency situations, Wahlig felt that Brownlee had superior communication skills and performed better under the pressures of an emergency scene. (Doc. #40-9, pp. 7-8.) Wahlig also questioned Rodriguez's commitment to long term tasks and projects because she had failed to complete them in the past. The Court finds that proffered reasons for promoting

32

Brownlee are legitimate and nondiscriminatory.  Because EFR has presented a legitimate, nondiscriminatory reason for not promoting Rodriguez, the burden of production shifts to Rodriguez, who must show that the articulated reason is a pretext for discrimination.

(2)  **Pretext**

To establish pretext, a plaintiff must show that the disparities between the successful applicant's and her own qualifications were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Brooks v. Cnty. Comm'n of Jefferson Cnty, Ala., 446 F.3d 1160, 1163 (2006) (quoting Cooper, 390 F.3d at 732).  Based on the evidence, the Court finds that plaintiff has failed to show that the disparities between her qualifications and Brownlee's qualifications were so severe that no reasonable person could have chosen Brownlee over her.  Indeed, plaintiff testified that her qualifications did not exceed Brownlee's qualifications, but she believed that she could have contended for the position.  (Doc. #40-1, p. 49.)  Horton also stated that Brownlee was qualified for the position.  (Doc. #40-10, p. 5.)  Because plaintiff has presented no evidence to show that EFR's reasons were pretextual, defendants are entitled to summary judgment as to this issue.

**V.**

Plaintiff's Complaint alleges that EFR created and maintained a hostile work environment. To establish a hostile work environment, plaintiff must show harassing behavior "sufficiently severe or pervasive to alter the conditions of [her] employment." Pennsylvania State Police v. Suders, 542 U.S. 129, 133 (2004) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). All of the circumstances must be considered when determining whether the allegedly discriminatory conduct is sufficiently severe or pervasive, including the conduct's "frequency[;] . . . its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Jones v. UPS Ground Freight, 683 F.3d 1283, 1299 (11th Cir. 2012) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

Here, plaintiff has failed to present any competent evidence suggesting that her job performance was adversely affected by the alleged harassment. Due to the absence of evidence supporting an essential element of her claim, summary judgment in defendants' favor is warranted. See Streeter v. City of Pensacola, Fla., 501 F. App'x 882, 884 (11th Cir. 2012).

In conclusion, the Court finds that defendants are entitled to summary judgment on all of plaintiff's claims.

## VI.

In connection with her response to defendants' motion for summary judgment, plaintiff submitted her Affidavit and the Affidavit of Jeannine Horton. Defendants have filed a motion to strike in which they argue that portions of the affidavits must be excluded from consideration by the Court. Because the material defendants seek to strike was immaterial to the Court's decision, the motion will be denied as moot.

Accordingly, it is now

**ORDERED:**

1.   Defendants' Joint Motion for Summary Judgment (Doc. #40) is **GRANTED** and the Complaint is **dismissed with prejudice**.

2.   Defendants' Motion to Strike Portions of the Affidavits of Felicia Rodriguez and Jeannine Horton (Doc. #51) is **DENIED AS MOOT.**

3.   The Clerk shall enter judgment accordingly, terminate all pending motions and deadlines, including the Final Pretrial Conference scheduled for Tuesday January 20, 2015, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this   15th   day of January, 2015.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies: Counsel of record